## W. W. Baker v. Nichols & Shepard Company, *a Corporation.*

(Filed Feb. 8, 1901.)

1. DIRECTING VERDICT —*What Evidence Disregarded.* The trial court, upon motion of the plaintiff, directed the jury to bring in a verdict for the plaintiff, and thus took the case out of the hands of the jury. The sole question for the judge to determine in such a case is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the motion is made, together with such conclusions as could be reasonably drawn from it, there was enough of such evidence as reasonably tended to support the verdict rendered by the jury. And where the direction of a verdict is asked upon conflicting evidence, all facts and inferences therefrom in conflict with the evidence against which the motion is made, should be disregarded.

2. CONTRACT—*Written Notice—Waived, When.* Upon a written contract for the sale of a threshing machine and engine, which requires that a written notice of the failure of the machine to work in a satisfactory manner be given to the machine company within a specified time, it is held that this provision of the contract is intended for the benefit of the machine company, and that if, in compliance with the purchaser's notice and request, an agent is sent to fix the machine, the machine company will be held to have waived that provision of the contract which requires written notice, and that, having acted upon the notice which was given to them, they cannot now be permitted to assert that the notice was not as full or formal as, under the contract, they were entitled to receive.

(Syllabus by the Court.)

*Error from the Probate Court of Blaine County; before W. H. Bowdre, Probate Judge.*

*Lookabaugh Bros., C. O. Blake* and *E. E. Blake,* for plaintiff in error.

No brief filed for defendant in error.

### STATEMENT OF THE CASE.

This action was commenced in the probate court or Blaine county by the defendant in error against the plaintiff in error, upon the first of a series of promissory notes given for a threshing machine and engine.

The defendant answered that the machine was purchased under a written contract, the material parts of which are as follows: .

"This machinery is purchased and sold subject to the following express warranty and agreement, and none other, viz.: That said machinery is well made, of good materials, and, with proper management, capable of doing well the work for which the machines respectively are made and sold." *  *  *

The defendant averred that the machinery in all parts failed to do well the work for which it was made and sold, and that, in pursuance of the terms of the contract of purchase, the defendant upon the instruction of the plaintiff, and according to the terms of the said contract, duly notified the plaintiff of such failure of the machine, and duly complied with all the provisions and directions of the plaintiff and plaintiff's agents and experts, and rendered all necessary and possible and friendly assistance to the plaintiff in its attempt to adjust and correct the machine, and make it do well the work for which it was made and sold.

That the machine could not be made by the plaintiff or defendant, separately or together, to do well the work for which it was made and sold, and that that fact was ascertained and admitted by the plaintiff, and the defendant returned the machinery to the plaintiff at his, the plaintiff's, own request, and that the same was accepted,

and that the plaintiff promised to send another machine to the defendant, but had refused and neglected to do so, and that the consideration for the notes had wholly failed.

Upon trial, the execution of the note having been admitted, evidence was produced by Baker, to the effect that the machine had received good management while it was in the possession of the defendant, that Baker had himself had twenty years experience in handling threshing machines, and was competent and was assisted in endeavoring to make the machine run properly by experienced machine men and by several valuable experts, including Andrews, the agent of the plaintiff company, who had made the sale of the thresher and engine to the defendant. Abundant testimony was produced showing that the machine was not capable of doing well the work for which it was made and sold; that the traction engine, a part of the consideration, "would not pull the separator on ordinary roads," that on the first day on which the separator and thresher were used, it would not run, and that it would not do threshing; that the straw stacker would not work; that the machine would choke up, the straw carrier would not carry away the straw, the cylinder was out of plumb, belting not properly adjusted; that the machine would not separate the grain from the straw, and that no part of it ran properly or did its work well; that four hours were spent threshing fifty bushels of wheat; that three thousand, three hundred pounds of coal and a day and a half were spent in threshing 550 bushels of wheat; and that more than twice that amount of wheat should have been threshed in a single day, with the expenditure of a thousand pounds of coal. Much evi-

dence was adduced to show that the machine was worth-less, and cost more to run it, and was so defective in its operation and inefficient in its work, that while it was earning $900 it cost $1,300 for hands and boarding, besides the freight and other expenses. Testimony was adduced to show that the defendant had notified the company by registered letter within the time named in the contract, and had also notified the local agent of the company, Fisher, at the nearest station where the company had an office. And that within five or six days after sending his first letter of notice to the company at Battle Creek, Michigan, their agent, Andrews, who had made the sale of the machine and engine to the defendant, came and took charge of the machine to repair it; that Andrews afterwards came back again, bringing with him an expert workman named Bradley, and together with him, worked at and experimented with the machine for some days, and finally Andrews said to the defendant: "Mr. Baker, this is our machine, and we cannot make it work, and it is our machine, and I will go to Hennessey and telegraph for a new machine right away," and that he told Baker to come to Hennessey two days afterwards and get a new machine, and that Baker did go to Hennessey at the time, but found no machine there for him.

Testimony was given to show that several supposed expert workmen in the employment of the company at different times for several weeks continued to work with the machine until it was thus finally taken off the defendant's hands by the declaration of the man Andrews, from whom he had purchased it.

Repeated notices were given to the company. The record is full of testimony that the machine furnished

to the defendant was worthless. There is no evidence at all to contravene the proofs of the defendant's capacity to manage a threshing machine and outfit. Upon the trial the probate judge directed the jury to bring in a verdict for the plaintiff. The jury disregarded the direction of the judge, and returned a verdict for the defendant, which, upon the motion of the plaintiff, the probate judge set aside, entering up judgment against the defendant for the amount of the note.

Opinion of the court by

McATEE, J.: The action of the probate court was erroneous. Evidence was offered to sustain every essential point which entitled the defendant to a judgment, and the court should have permitted the case to go to the jury to be determined, and should not have directed the jury to return a verdict for the plaintiff.

Where evidence has been given supporting all the points necessarily involved in the conclusion to which a jury might reasonably come upon controverted questions of fact, it is not in the province of the trial judge to take a case from the jury, and he ought not to undertake to deprive the jury of its right to find a verdict upon the evidence which has been adduced to it. The sole question for the judge to determine in such a case is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the motion is made, together with such conclusions as could be reasonably drawn from it, there was enough of said evidence as reasonably tended to support the verdict which the jury might render. And where the direction of a verdict is asked upon conflicting evidence, all facts and inferences therefrom in conflict with the evidence against which

the motion is made, should be disregarded.    (6th Ency. of Pl. & Pr. 393.)

But when the judge in this case undertook to set aside the verdict of the jury, he undertook to pass upon the credibility of the evidence, which is not, under our system, within the province of the judge. We have read the testimony, and think that the direction was against the preponderance of evidence.

After the plaintiff company was notified that the machine was not working satisfactorily, their agents appeared upon the scene and took charge of the machine, and at different times during the period of twenty-seven days, during which Baker was trying to use it took possession of it, took it partly to pieces, and tried to make it an effective and useful machine, but failed to do so.

Even if it had appeared to the jury that the written notice required by the warranty had not been strictly complied with, they should yet have found for the defendant, if they were satisfied upon the evidence, as it was adduced to them, that the plaintiff company had thus taken charge of the machine for the purpose of repairing and trying to put it in order. These acts dispensed with that provision of the warranty which requires written notice of the failure of the machine to work in a satisfactory manner.

It is provided in the warranty, that:

"No general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents, and have no authority to bind the company by any contract or statement."

Such provisions as this are uniformly considered to be limitations upon the capacity of the corporation for further action which it cannot impose upon itself, and that

such provisions cannot operate to prevent waiver by the corporation of the conditions of the contract which would, except for the prohibition, legally result from the acts of its authorized agents with reference to the machinery. (*Nichols & Shepard Co. v. Wiedmann*, 75 N. W. 208; *Trust Co. v. Welch*, 47 Minn. 183, 49 N. W. 740; *Lamberton v. Ins. Co.*, 39 Minn. 129, 39 N. W. 76; *Flatt v. D. M. Osborne & Cc.*, [Minn.] 22 N. W. 440.)

. In response to the notification from the defendant the plaintiff took charge of its machine by these various agents and workmen, and attempted to put it in order. The attempt was subsequently and frequently repeated by persons representing the plaintiff from time to time. If the conditions of the printed warranty were binding upon the plaintiff, they were, at any rate, waived and thus fulfilled.

In *Davis v. Wood*, (Iowa) 25 N. W. 282, the circuit court had instructed the jury that the machine company might waive these provisions of the contract which were intended for its benefit, and that if, in compliance with defendant's request, they sent an agent to fix the machine, they thereby dispensed with that provision of the contract which requires written notice of the failure of the machine to work in a satisfactory manner to be given them; and the supreme court of Iowa said upon it, that:

"Having acted upon the notice which was given them, they cannot now be permitted to assert that it was not as full or formal a notice as, under the contract, they were entitled to receive."

In *Aultman-Taylor Co. v. Frazier et al.*, 47 Pac. Rep. 157, (Court of Appeals of Kansas), there was a conflict of testimony concerning the notice given to the company, but it was "beyond dispute that the general manager of

the company for the state of Kansas received notice (how or from whom it is not shown), and that he sent an expert to look after this machine. But upon this proposition seems to hinge all of the company's contention 'that they did not receive notice as required by the contract, that is, by registered letter sent to the company at Mansfield, Ohio.' "

The court said, "We think this notice to the general manager would be sufficient notice under the warranty, striking out the conflicting testimony upon the subject of written notice to the house." (*Machine Co. v. Mann,* 42 Kans. 372, 22 Pac. 417.)

It was held in a similar case that where the agent of the company appeared and took charge of the repairs, after the machine was set up and the company notified that it was defective, it, "of course, dispensed with the necessity of any written notice to the company to send an expert. And it is apparent that the conditions did not subsequently exist under which, by the terms of the contract, there was a trial and retention of the machine by Welch, such as to work a forfeiture of the warranty." (*Mass. Loan & Trust Co. v. Welch,* [Minn.] 49 N. W. 740.)

But we see no reason why the defense in this case should be put upon narrow grounds. The warranty in this case was mutual. It was signed by the defendant, but it was accepted by the plaintiff, and it was binding upon both, and it contained the warranty and agreement on behalf of the plaintiff, that the "said machinery is well made, of good materials, and, with proper management capable of doing well the work for which the machines respectively are made and sold," as well as the condition, "that, if in five days from its first use, it shall fail to

fill this warranty, written notice shall be immediately given by the purchaser to Nichols & Shepard company, at Battle Creek, Michigan, stating particularly what parts and wherein it fails to fill the warranty."

The contract was mutual. The plaintiff was bound to remedy the defect, and, if possible, to make the machinery a practical success. It failed to do so. A number of experts, working in behalf of the company, through a series of days, extending over almost the whole of a month, endeavored by repairing to get the machine into some kind of working shape. The evidence shows that their efforts were a failure, and the defendant ought to have been released from any liability. (*Aultman-Taylor Co. v. Frazier*, 47 Pac. 157.)

The cause is remanded, with direction to the probate court of Blaine county to revoke its judgment, and with direction for new trial in accordance with the views herein expressed.

All of the Justices concurring.